# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| TISDA CAMPBELL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 3:07-cv-00562-CLS |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an employment discrimination case. Plaintiff, Tisda Campbell, is employed by the Alabama Department of Transportation ("ALDOT" or "defendant") as an "Engineering Assistant."[1] She alleges discrimination on the basis of her gender, female, and her race, African American, the creation of a hostile work environment (based solely on gender discrimination), and retaliation. She asserts those claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.[2] Defendant has moved for summary judgment on all of plaintiff's claims.[3] In response, plaintiff concedes that her claims

---

[1] Doc. no. 64 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment), Additional Undisputed Facts, at ¶¶ 1-5. *See also* doc. no. 1 (Complaint), at ¶¶ 4, 7.

[2] *See* doc. no. 7 (First Amended Complaint), at ¶¶ 21, 24, 28, 32.

[3] *See* doc. no. 30 (Defendant's Motion for Summary Judgment). Defendant has also filed a motion to strike certain of plaintiff's evidentiary submissions. *See* doc. no. 68. The evidence with which defendant takes issue is immaterial to plaintiff's claims, and has not been considered by the court. As a consequence, defendant's motion to strike is due to be denied.

brought under § 1981 are due to be dismissed, and judgment will be entered in favor of defendant on that aspect of plaintiff's case without further discussion.[4]  Upon consideration of the pleadings, the parties' briefs, and the evidence of record, the court concludes that defendant's motion is due to be granted as to plaintiff's remaining claims.

## I.  STANDARD AND SCOPE OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[5]  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In making this determination, the court must review all evidence and

---

[4]Doc. no. 64 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment), at 3.

[5] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

make all reasonable inferences in favor of the party opposing summary judgment.

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal quotations and citation omitted) (bracketed text suppled).

Moreover, the parties each present the court with numerous factual allegations, legal claims, and a host of evidence that are not related to the claims of the first amended complaint — the operative complaint in this action. Matters that are superfluous to the allegations and claims asserted in that pleading will not be considered on summary judgment.

Also, plaintiff may not amend her first amended complaint through arguments against summary judgment. *See, e.g., Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (noting that a plaintiff is not permitted to "raise new claims" in opposition to summary judgment, and "may not amend her complaint through argument in a brief opposing summary judgment"); *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1358 (11th Cir. 1998) ("Plaintiff's references to unpled incidents of alleged discrimination . . . throughout the conduct of discovery [are] no

3

substitute for the factual allegations of a complaint required by Federal Rule of Civil Procedure 8.") (citing *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563 (11th Cir. 1987)).  *See also* Fed. R. Civ. P. 8(a)(2) (requiring pleader to set forth a "short and plain statement . . . showing that the pleader is entitled to relief").  In summary, the scope of this court's review on summary judgment is limited to the adjudication of the allegations and legal claims asserted in plaintiff's first amended complaint, and nothing more.

## II.  PLAINTIFF'S FIRST AMENDED COMPLAINT[6]

Because the parties have departed from the four corners of the first amended complaint in making their arguments on summary judgment, it is necessary to begin with a brief discussion regarding the allegations of that pleading.

Plaintiff asserts that she "was the only female employee assigned to work under Project Manager Rod Ellis."[7]  According to plaintiff, Ellis told her that she needed to perform "clerical and custodial" tasks because of her gender.[8]  Plaintiff also takes issue with the following alleged actions taken against her by either Rod Ellis or Joe McInnes (Transportation Director):  (1) on January 3, 2006, "[p]laintiff received a verbal warning from Rod Ellis for tardiness while other male employees who have

---

[6]These are *not* the facts of this case for purposes of summary judgment.

[7]Doc. no. 7 (First Amended Complaint), at ¶ 8.

[8]*Id.* at ¶ 9.

4

been tardy received no such disciplinary action";[9] (2) she was transferred to "another project manager without prior consultation or request [on January 12, 2006] as retaliation for complaining about discriminatory job requirements";[10] and (3) Joe McInnes revoked plaintiff's privilege of driving a State-owned vehicle "while the same action has not been taken against male employees."[11]  Plaintiff further alleges that she "endured gender discrimination from [Ellis] with the latest date being January 4, 2006."[12]

Based on the foregoing allegations, plaintiff asserts claims under Title VII for "race discrimination," "sex discrimination," "retaliation," and "hostile work environment based upon sex discrimination."[13]

### III.  SUMMARY OF FACTS

Plaintiff, an African American female currently employed by ALDOT, has held the "job classifications" of "Engineering Assistant" and "Engineering Assistant I."[14] She was assigned to "District 1 of the First Division in Decatur, Alabama."[15]

---

[9]*Id.* at ¶ 10.

[10]*Id.* at ¶¶ 11-12

[11]*Id.* at ¶ 14, 17.

[12]*Id.* at ¶ 17.

[13]Doc. no. 7 (First Amended Complaint), at ¶¶ 21, 24, 28, 32.  As noted above, plaintiff conceded that her claims brought under 42 U.S.C. § 1981 are due to be dismissed.

[14]Doc. no. 59 (Defendant's Brief in Support of Motion for Summary Judgment), Statement of Undisputed Facts, at ¶¶ 9-10.

[15]*Id.* at ¶ 12.

Initially, her supervisor at District 1 was Rod Ellis;[16] however, from January 12 until November 16, 2006, Carlos Broadway replaced Ellis as plaintiff's supervisor.[17]

On one or two occasions, plaintiff heard Ellis comment that he liked "women with big butts," and that he was fond of his wife's "behind," because of its size.[18] Two or three times, Ellis told plaintiff that, because she "was a female, [she] needed to stay in the office and clean the office up."[19] There is, however, no evidence of record that she *actually* cleaned the office as a result of Ellis's comments.

On January 3, 2006, plaintiff came to work five minutes late, and was given a verbal reprimand by Ellis for her tardiness; however, male employees who were also late were not chastised.[20] Plaintiff has conceded that "a verbal warning or verbal reprimand to an employee has no adverse employment action."[21]

In connection with her employment with ALDOT, plaintiff was permitted to drive a State vehicle. That privilege is a perquisite, and is not guaranteed for persons in plaintiff's job classification.[22] In late-2005 (when plaintiff was still under Ellis's

---

[16]*Id.*

[17]*Id.* at ¶ 13.

[18]Doc. no. 32, Exhibit 3 (Deposition of Tisda Campbell), at 72-75.

[19]*Id.* at 70, 73.

[20]Doc. no. 59 (Defendant's Brief in Support of Motion for Summary Judgment), Statement of Undisputed Facts, at ¶ 33.

[21]*Id.* at ¶ 27. *See also* doc. no. 64 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment), Response to Defendant's Statement of Undisputed Facts, at ¶ 27 ("*Admitted*") (emphasis in original).

[22]*See* doc. no. 59 (Defendant's Brief in Support of Motion for Summary Judgment),

supervision) a private citizen observed plaintiff operating a State vehicle in excess of the posted speed limit, and reported the observation to Joe McInnes, Transportation Director.[23]  Plaintiff was, in fact, speeding, and she was aware at the time that it was "wrong to speed in a state vehicle."[24]  Plaintiff was given a verbal reprimand by Ellis,[25] and McInnes revoked plaintiff's privilege of driving a State vehicle.[26]  Her driving privileges have not been restored.

During the time period relevant to this action, ALDOT was operating subject to a Consent Decree entered by the United States District Court for the Middle District of Alabama in *Reynolds v. Alabama Department of Transportation*, No. 85-T-665-N, 1994 WL 899259 (M.D. Ala. Mar. 16, 1994).  The Consent Decree required ALDOT employees to file complaints of discrimination directly with that Court.[27]  Plaintiff filed such a grievance with the *Reynolds* Court against ALDOT and Ellis, alleging race and sex discrimination based on the discipline she received following the speeding incident.[28]  An impartial hearing officer, who was appointed and approved by the *Reynolds* court, "found no evidence of race or sex discrimination

---

Statement of Undisputed Facts, at ¶ 40.

[23]*Id.* at ¶ 17.

[24]Doc. no. 40, Exhibit 9 (Transcript of December 1, 2005 Grievance Hearing), at 5-7.

[25]*See* doc. no. 59 (Defendant's Brief in Support of Motion for Summary Judgment), Statement of Undisputed Facts, at ¶ 17.

[26]*Id.* at ¶ 18.

[27]*Id.* at ¶ 16.

[28]*Id.* at ¶ 19.

from Plaintiff's grievance complaint surrounding the suspension of her driving privileges and the April 26, 2005 verbal reprimand."[29]  After receiving an unfavorable decision from the hearing officer, plaintiff filed a complaint with the EEOC on March 27, 2006, regarding those same claims that were adjudicated by the hearing officer, as well as those allegations that form the basis of this lawsuit.

## IV.  DISCUSSION

### A.    Plaintiff Abandoned All Claims Asserted in the First Amended Complaint

As noted above, defendant has moved for summary judgment as to all claims asserted in plaintiff's first amended complaint, and it has provided supporting evidence and arguments thereto. The fact that plaintiff cannot amend her complaint to raise new claims through her response to defendant's motion for summary judgment plays a critical role here, because plaintiff's arguments in opposition to summary judgment focus *solely* upon facts (and claims arising from those alleged facts) that are *not* pled in the first amended complaint — even under the most liberal reading of that pleading.  Plaintiff's arguments against summary judgment are premised exclusively on the alleged actions of Carlos Broadway, the individual who served as plaintiff's immediate supervisor *after* Rod Ellis.  Broadway is not named anywhere within the first amended complaint, and plaintiff has limited her claims to

---

[29]*Id.* at ¶ 20.

8

occurrences that occurred prior to January 4, 2006 — eight days before plaintiff was reassigned to work under Broadway's supervision.   Furthermore, in response to defendant's motion, plaintiff does not make any mention whatsoever of either Rod Ellis or Joe McInnes, nor does she discuss defendant's arguments with regard to her claims against ALDOT that are based on those individuals' actions.

In short, plaintiff's failure to articulate *any* opposition to summary judgment with regard to the claims of the first amended complaint is dispositive of defendant's motion.  Issues and contentions relied upon by a movant on summary judgment, but not raised in a party's brief in opposition to summary judgment, are properly deemed abandoned.   *See*, *e.g.*, *Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser*, *Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground

not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).  *Cf. Greenlaw v. United States*, --- U.S. ----, 128 S. Ct. 2559, 2564 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").  In essence, because plaintiff has failed to respond, in any way whatsoever, to defendant's motion for summary judgment *as to the claims articulated in the first amended complaint*, plaintiff has effectively abandoned all claims that form the basis of this lawsuit.  Plaintiff's musings about the alleged actions of Carols Broadway are immaterial to *this* action. Summary judgment is, therefore, due to be granted.

**B.    Plaintiff's Title VII Claims**

Wholly separate from the fact that plaintiff abandoned the claims that form the basis of this action, defendant's arguments in favor of summary judgment as to her Title VII claims are, alternatively, meritorious.

Proving that an employer relied on a plaintiff's race or gender when terminating her employment is rarely a straightforward undertaking. Stated differently, a plaintiff's case generally rests entirely on circumstantial evidence, because direct evidence of an employer's intent or motivation often is either

unavailable or difficult to acquire.  *See Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3rd Cir. 1996) (*en banc*).   Despite plaintiff's mistaken insistence that there is direct evidence of gender based discrimination in this case, the evidence before this court is purely circumstantial.[30]

Federal courts typically evaluate the sufficiency of circumstantial evidence using some variant of the framework articulated by the Supreme Court in *McDonnell*

---

[30]Direct evidence is generally defined as evidence which, if believed, proves the existence of a fact in issue without the need of an inference or presumption.  *See, e.g.*, *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1111 (11th Cir. 2001) (holding that the term "direct evidence," when used in the context of Title VII race discrimination claim, "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination"); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion."); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (defining direct evidence of discrimination as evidence which, "if believed, proves [the] existence of [a] fact in issue without inference or presumption"); *Merritt v. Dillard Paper Co.*, 120 F.2d 1181, 1189 (11th Cir. 1997) (same); *Earley v. Chamption Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (same); *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982) ("Where the evidence for a *prima facie* case consists . . . of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the *prima facie* evidence the ultimate issue of discrimination is proved; no inference is required.").  *See generally Black's Law Dictionary* 577 (7th ed. 1999) (defining "direct evidence" as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.").

In the context of employment discrimination cases, direct evidence of an employer's intent to discriminate on the basis of some prohibited characteristic is more specifically defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'"  *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter*, 132 F.3d at 641 (in turn quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)).  As such, "direct evidence of discrimination is powerful evidence capable of making out a *prima facie* case essentially by itself." *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (*per curiam*).  In summary, "[t]o amount to direct evidence, a statement must:  (1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).  No piece of evidence before this court meets the criteria for "direct" evidence.

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).   As Justice O'Connor observed in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "the entire purpose of the *McDonnell Douglas prima facie* case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by."  *Id.* at 271 (O'Connor, J., concurring).

Under the *McDonnell Douglas* framework, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802; *see also Burdine*, 450 U.S. at 253-54 & n.6.  The plaintiff's burden to initially satisfy the elements of a *prima facie* case is not great.  *Burdine*, 450 U.S. at 253 ("The burden of establishing a *prima facie* case . . . is not onerous."); *see also*, *e.g.*, *Turlington v. Atlanta Gas Light Co.*, 153 F.3d 1428, 1432 (11th Cir. 1998) ("[A] plaintiff's burden in proving a *prima facie* case is light."); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (*per curiam*) ("Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference [sic] [*give rise to a rebuttable presumption*] of discrimination.") (alteration added).

"The effect of the presumption of discrimination created by establishment of the *prima facie* case is to shift to the employer the burden of producing legitimate,

non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254); *see also*, *e.g.*, *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (same).

To rebut the presumption of intentional discrimination, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [contested employment decision]." *Burdine*, 450 U.S. at 255. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *id.* at 257, the presumption of discrimination created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10.

The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) (holding in the context of a Rule

13

50 motion that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").  If a plaintiff does so, then he or she "is entitled to survive summary judgment." *Combs*, 106 F.3d at 1529.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

## A.    Race and Gender Based Discrimination

A *prima facie* case of either race or gender based discrimination requires proof of four elements:  (1) plaintiff is a member of a protected class; (2) she was subjected to an adverse employment action; (3) defendant treated similarly situated employees outside her protected class more favorably; and (4) she is qualified to do the job.  *See*, *e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  It is undisputed that plaintiff is a member of protected classes — *i.e.*, plaintiff is an African American female — and that she is qualified to do her job.  As such, the first and fourth elements of a *prima facie* case for race or gender discrimination are satisfied.

As to the third element — whether plaintiff was subjected to an adverse employment action — plaintiff was told by her immediate supervisor, on two or three occasions, that she should clean the office because she was a female, she received one

14

verbal reprimand for tardiness while similarly situated male employees were not chastised for the same offense,[31] she was unknowingly assigned to work under a different supervisor within District 1, and her driving privileges were revoked because she was admittedly speeding in a State vehicle.  None of these instances, even considered in the aggregate, constitutes an actionable adverse employment action.

An employment action is considered sufficiently "adverse" to be actionable under federal discrimination statutes "only if it results in some *tangible*, *negative effect* on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc*., 257 F.3d 1249, 1261 (11th Cir. 2001) (emphasis supplied).  The fundamental principle is that Title VII is not a "general civility code"; accordingly, it does not protect employees from "the ordinary tribulations of the workplace."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998).[32]  It follows, therefore, that an employment action does not become actionably *adverse* "merely

---

[31]As discussed in Section III, *supra*, plaintiff conceded that verbal reprimands are not adverse employment actions.

[32]*See also, e.g.*, *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (holding, in the context of a case founded on the Americans with Disabilities Act ("ADA"), that "the ADA, like Title VII, is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'") (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998)).  *Cf. McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (observing, in the context of an action founded on 42 U.S.C. § 1983, that the phrase "'adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands").

because the employee dislikes it or disagrees with it." *Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting *Perryman v. West*, 949 F. Supp. 815, 819 (M.D. Ala. 1996)); *accord McCoy v. Macon Water Authority*, 966 F. Supp. 1209, 1220 (M.D. Ga. 1997). Neither "every unkind act,"[33] nor "everything that makes an employee unhappy,"[34] amounts to an *adverse* employment action. "Otherwise, every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (Posner, C.J.) (*quoted with approval in Doe*, 145 F.3d at 1449).

Stated somewhat differently, a plaintiff's subjective feelings and personal reactions are not the complete measure of whether a contested employment action is sufficiently "adverse" to be actionable under federal employment discrimination statutes. If a plaintiff's individualized response to an employer's decision was the test for determining "adversity," then "the most unreasonably hypersensitive employee would be entitled to more protection than a reasonable employee. . . ." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).[35]

---

[33] *Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir. 1993) (*per curiam*)).

[34] *Doe*, 145 F.3d at 1450 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)); *see also Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything that makes an employee unhappy is an actionable adverse action.").

[35] Indeed, the Eleventh Circuit panel deciding *Doe v. Dekalb County School District* "found no case, in this or any other circuit, in which a court explicitly relied on the subjective preferences

The Eleventh Circuit observed in *Davis v. Town of Lake Park*, 245 F.3d 1232

(11th Cir. 2001), that it had

> never adopted a bright-line test for what kind of effect on the plaintiff's "terms, conditions, or privileges" of employment the alleged discrimination must have for it to be actionable; nor would such a rigid test be proper. *See, e.g., Gupta*, 212 F.3d at 586 ("Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis."). *It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes [an] adverse employment action. See Wideman*, 141 F.3d at 1456 ("we do not doubt that there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable"); *Wu*, 996 F.2d at 273-74 (although we "have never defined what this general phrase [adverse employment action] means," none of our prior decisions "establish the proposition that every unkind act, even those without economic consequences, can violate Title VII"); *Merriweather*, 17 F. Supp. 2d at 1274 (a "term or condition of employment may be said to have been affected if there is a 'demonstrable adverse impact. . .'"). This limitation is consistent with the basic principle that "Title VII[] is neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Gupta*, 212 F.3d at 587 (quoting Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999).

*Davis*, 245 F.3d at 1238-39 (emphasis added).

Ultimately, therefore, a plaintiff within the Eleventh Circuit must show a

*serious and material* change in the terms, conditions, or privileges of his

employment, and the plaintiff's subjective view of the significance of his employer's

---

of a plaintiff to hold that that plaintiff had suffered an adverse employment action." *Doe*, 145 F.3d at 1448 (footnote omitted); *see also id*. at 1449 (reiterating that "no panel of this circuit has ever listed a plaintiff's particular subjective preference as a basis for its holding that a transfer was adverse") (footnote omitted).

action is not controlling; rather, it must be demonstrated that a reasonable person, placed in the plaintiff's same position, would have viewed the contested employment action as materially adverse under the circumstances, before it may be said to rise to the level of an actionable, "adverse" employment action.  *See, e.g.*, *Davis v. Town of Lake Park*, 245 F.3d at 1239; *Doe*, 145 F.3d at 1449 ("An ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse.").[36]  "Any adversity must be material; it is not enough that a transfer[, or any other contested employment action,] imposes some *de minimis* inconvenience or alteration of [the terms, conditions, privileges, or] responsibilities [of the plaintiff's job position]."  *Id.* at 1453 (citing *Crady v. Liberty National Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)) (footnote omitted);[37] *see also Davis*

---

[36]In *Doe v. Dekalb Co. School Dist.*, 145 F.3d 1441 (11th Cir. 1998), the court addressed an issue of first impression within the Eleventh Circuit:  *i.e.*, "whether a court should view an employment action from the subjective perspective of a particular plaintiff or the objective perspective of a 'reasonable person.'"  *Id.* at 1447.  The *Doe* case addressed a claim founded upon the Americans with Disabilities Act ("ADA").  Nevertheless, as the court noted, Eleventh Circuit precedent interpreting Title VII, the Age Discrimination in Employment Act, and the ADA "have often relied on the same 'adverse employment action' concept that is an essential element of a *prima facie* ADA case. . . .  We can assist our consideration of the adversity standard under the ADA, therefore, by looking to the broader experience of our court and others with employment discrimination law."  *Doe*, 145 F.3d at 1448 (citations omitted).  As noted in text, the *Doe* court adopted an objective test:  a plaintiff establishes an "adverse employment action" only if he "demonstrate[s] that a reasonable person in his position would view the employment action in question as adverse."  *Id.* at 1449.  "Any adversity must be material; it is not enough that [the contested employment action] imposes some *de minimis* inconvenience or alteration of responsibilities."  *Id.* at 1453.

[37]In the omitted footnote, the *Doe* Court observed that:

It is important not to make a federal case out of a transfer that is *de minimis*, causing no objective harm and reflecting a mere chip-on-the-shoulder complaint.

*v. Town of Lake Park*, 245 F.3d at 1239 ("Whatever the benchmark, it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job *in a real and demonstrable way*.") (emphasis supplied).  In other words, employment decisions that fall short of "patently adverse" employment actions — defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) — "must meet 'some threshold level of substantiality . . . to be cognizable'" under Title VII.  *Gupta*, 212 F.3d at 587 (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)); *see also Smith v. Alabama Department of Public Safety*, 64 F. Supp. 2d 1215, 1221-22 (M.D. Ala. 1999) (finding that Title VII plaintiff could not establish adverse employment action, because he

---

However, it is equally important that the threshold for what constitutes an adverse employment action not be elevated artificially, because an employer's action, to the extent that it is deemed not to rise to the level of an adverse employment action, is removed completely from any scrutiny for discrimination.  In other words, where the cause or motivation for the employer's action was clearly its employee's disability, a finding that the action does not rise to the level of an adverse employment action means that the action is not scrutinized for discrimination.  An artificially high threshold for what constitutes an adverse employment action would undermine the purposes of the statute by permitting discriminatory actions to escape scrutiny.  We believe that the purposes of the statute are appropriately served by requiring the fact finder to determine whether a reasonable person would consider the action adverse under all the facts and circumstances.

*Doe*, 145 F.3d at 1453 n. 21.

19

suffered no loss in pay, benefits, or classification, only great embarrassment).  "In sum, [the plaintiff] must demonstrate that a reasonable person in his position would have found the transfer [or other contested employment action] to be adverse under all the facts and circumstances."  *Doe*, 145 F.3d at 1453.

The rejection of a particular plaintiff's subjective feelings and personal reactions to a contested employment action as the sole measure for determining whether an employer's decision was "adverse" is wholly consistent with related principles of employment discrimination law generally.

> Under the doctrine of "constructive discharge," for example, "[t]he general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer . . . is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Young v. Southwestern Sav. and Loan Assoc.*, 509 F.2d 140, 144 (5th Cir.1975).  In assessing constructive discharge claims, we do not consider a plaintiff's subjective feelings about his employer's actions.  Rather, we determine whether "a reasonable person in [the plaintiff's] position would be compelled to resign." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989); *accord, e.g.*, *Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 26 (1st Cir.1997) ("We have long applied an 'objective standard'. . . ."); *Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir.1985) ("[S]ubjective impressions as to the desirability of one position over another cannot control our decision.") (quoting *Lee v. Russell Cty. Bd. of Educ.*, 563 F.2d 1159, 1162 (5th Cir.1977)).

*Doe*, 145 F.3d at 1450; *see also id*. at 1451 (discussing how adoption of an objective standard for determining when a contested employment action is adverse is consistent

20

with "our current use of objective standards regarding employers' claims and defenses").

Moreover, a purely subjective measurement of "adversity" would render that element of the *McDonnell Douglas* analytical framework requiring a plaintiff to demonstrate, as part of his prima facie case, that he had suffered an "adverse" employment action "essentially meaningless."

> In order for an honest plaintiff to go to the trouble of suing his employer, he must be unhappy with some action that his employer has taken.  Given this basic fact, a subjective standard would mean that no court would ever seriously consider the adverse employment action prong of a prima facie ADA case — we could just assume this element to be satisfied in every case.  Even if we did not assume away the adversity requirement as a matter of course, a plaintiff could always prove this part of his case by testifying that he was unhappy with whatever employment action had brought him into court; [however,] an employer could rarely rebut its employee's statement of his own subjective feelings.

*Doe*, 145 F.3d at 1452.

In keeping with the foregoing principles, this court rejects plaintiff's subjective feelings about those actions she alleges to be adverse.  Plaintiff has failed to come forward with any evidence that she was subjected to an action that substantially and materially altered the terms and conditions of her employment.  When viewed through an objective lens, the conduct of which plaintiff complains had nothing more than a *de minimis* effect — if, indeed, it had any effect whatsoever — on the terms and

conditions of her employment.  Such an effect falls well short of the serious and material change in plaintiff's employment required of an adverse employment action.

Because plaintiff has failed to show that she suffered an adverse employment action, she has not met her burden to demonstrate a *prima facie* case or either race or gender based discrimination.  As such, defendant is entitled to summary judgment as to those claims.

**B.      Sex-Based Hostile Work Environment**

Plaintiff argues that she was subjected to a hostile work environment claim based on her gender because Ellis (1) told plaintiff, on two or three occasions, that she should perform "clerical and custodial" work because she was a woman;[38] (2) stated in her presence that he liked his wife's and other females' "big behinds";[39] and (3) once verbally chastised her for tardiness.[40]  Even when viewing the facts in a light most favorable to plaintiff, her hostile work environment claim fails.

To prove a *prima facie* case of hostile work environment, plaintiff must establish:  (1) she belongs to a class of protected persons; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon her gender; (4) the harassment was sufficiently severe or pervasive to alter the terms or

---

[38]Doc. no. 32, Exhibit 3 (Deposition of Tisda Campbell), at 73.

[39]*Id.* at 71.

[40]*Id.*

22

conditions of her employment and created a discriminatorily abusive working environment; and (5) the employer is responsible under a theory of either direct or vicarious liability.  *See*, *e.g.*, *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala. 1994) (citing *Henson v. Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982)). The Eleventh Circuit recently reiterated that, "in order to establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is *permeated* with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1214 (11th Cir. 2008) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002)) (emphasis supplied and internal marks omitted).   Plaintiff's allegations fall well short of that benchmark.

It would be generous to conclude that plaintiff's work environment under Ellis's supervision was peppered with gender-based ridicule.  That said, based upon the evidence before this court, her workplace was by no means "permeated" by gender discrimination or sexual harassment such that the terms and conditions of her employment were altered, nor did Ellis create an "abusive working environment" for plaintiff.  *Butler*, 536 F.3d at 1214.  Accordingly, plaintiff has failed to make out a *prima facie* case of a hostile work environment based on her gender, and defendant

is entitled to summary judgment as to her hostile work environment claim.

## C.    Retaliation

"Retaliation is a separate violation of Title VII."  *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).  Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Congress thus recognized two predicates for retaliation claims:  one for *opposition* to discriminatory practices, and another for *participation* in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." . . . And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted).

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she

engaged in protected activity; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal linkage between her protected activity and the adverse employment action. *See, e.g., Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999) (citing *Little v. United Techs.*, 103 F.3d 956, 959 (11th Cir. 1997)). In *Butler*, the Eleventh Circuit reiterated that it

> recognized that a plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

536 F.3d at 1213 (quoting *Little v. United Technologies, Carrier Transicold Division*, 103 F.3d 956, 961 (11th Cir. 1997)) (emphasis in original).

Of plaintiff's claims, her claim for retaliation is by far the weakest. In short, plaintiff asserts that she was retaliated against due to the revocation of her driving privileges, and by her reassignment from Ellis to a different supervisor. However, there is no evidence that plaintiff engaged in a "protected activity" prior to either the revocation of her driving privileges or her involuntary reassignment to another supervisor. In fact, plaintiff does not articulate, in any of her papers, specifically

what protected activity she took part in prior to being allegedly retaliated against. As a consequence, plaintiff has failed to make out a *prima facie* case of retaliation.

In addition, assuming for the sake of argument that plaintiff engaged in a protected activity of which her employer was aware (thereby satisfying the first and second *prima facie* elements), her retaliation claim nevertheless fails because she cannot show that she suffered an adverse employment action. This court already has held that the revocation of plaintiff's driving privileges and her involuntary reassignment to a different project manager were not adverse employment actions. Moreover, because plaintiff failed to identify a "protected activity" in which she engaged prior to the suspension of her driving privileges and the contested reassignment, it is impossible for this court to make a determination as to whether there is a causal link between that activity and those actions about which plaintiff complains.

In short, plaintiff has failed to meet *all* of the elements of a *prima facie* case of retaliation. Accordingly, defendant is entitled to summary judgment as to her retaliation claim.

## IV. CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is due to be GRANTED. A separate order will be entered consistent with this memorandum

opinion.

DONE this 13th day of March, 2009.

_____
United States District Judge